**CITY OF MIDLAND, Appellant,**

v.

**Patricia SULLIVAN and Michael Sullivan, Individually and Michael Sullivan as Next Friend of Adam Sullivan, Appellees.**

No. 08–99–00341–CV.

Court of Appeals of Texas,
El Paso.

July 27, 2000.

Opinion Overruling Rehearing
Sept. 28, 2000.

G. Chadwick Weaver, Keith Stretcher, City Atty., Mark A. Flowers, Asst. City Atty., Leslie G. McLaughlin, Midland, for Appellant.

Staci Cazanne Pirnar, Steven K. Dewolf, Dallas, for Appellees.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## *O P I N I O N*

ANN CRAWFORD McCLURE, Justice.

Patricia Sullivan and Michael Sullivan, individually, and Michael Sullivan as next friend of Adam Sullivan, brought suit against the City of Midland under the Texas Tort Claims Act, alleging that the City's failure to properly design, construct, and maintain the crosswalk and warning signs at Midland High School resulted in injuries to Adam when he was struck by a motor vehicle. Raising three issues for review, the City brings an interlocutory appeal from the denial of its plea to the jurisdiction based on sovereign immunity. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2000); *see Texas Department of Transportation v. Jones,* 8 S.W.3d 636, 638 (Tex.1999)(governmental defendant may contest in a plea to the jurisdiction whether the state has waived immunity from suit). We affirm in part and reverse in part.

## FACTUAL SUMMARY

Adam was struck by a motor vehicle at 7:27 a.m. on October 9, 1997, as he walked through a school crosswalk near Midland High School. He suffered serious injuries to his head, legs, arms, face, and shoulders, as well as internal injuries. Although Adam's "zero hour"[1] classes began at 7:30 a.m., the school zone signs did not activate the school zone thirty minutes in advance of classes, contrary to a City policy.

On March 30, 1998, the Sullivans filed suit against the City of Midland under the Texas Tort Claims Act alleging that the school zone, crosswalk, and warning signs failed to adequately warn drivers of crossing pedestrians. The Sullivans alleged that sovereign immunity had been waived because Adam's injuries were caused by a condition or use of real or tangible personal property owned and/or controlled by the City. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2)(Vernon 1997). They additionally relied on the waiver provision found in TEX.CIV.PRAC. & REM.CODE ANN. § 101.060(a)(2)(Vernon 1997) relating to the condition of a traffic sign, signal, or warning device. The City answered and filed special exceptions claiming that the Sullivans' pleadings did not demonstrate a waiver of sovereign immunity. The trial court sustained the special exceptions on September 8, 1998, and ordered the Sullivans to replead in order "to provide [the City] notice as to how the real property in

---

1. "Zero hour" or "zero period" classes are scheduled before the regular class day begins with "first period."

question may have contributed to the cause of the occurrence in question." The Sullivans filed their Second Amended Original Petition on October 13, 1998, alleging that certain defects and inadequacies of the school zone markers and warning signs proximately caused the accident. More specifically, the Sullivans alleged that although the "zero hour" classes began at 7:30 a.m. and the City had a policy of activating all school zones thirty minutes prior to classes, this particular school zone was not in operation at the time of the accident. They also alleged that the pavement markers identifying the school zone and crosswalk were not clearly visible to motorists and did not comply with the Manual for Uniform Traffic Control Devices (MUTCD). On November 2, 1998, the City filed a plea to the jurisdiction asserting that the Sullivans' pleadings did not allege how the City's tangible personal or real property was the instrumentality that directly caused Adam's injuries. The Sullivans not only filed a written response but again amended their pleadings to include an allegation that the City had knowledge of the defective and inadequate condition of the warning signs and pavement markers but failed to take corrective action. They alleged an additional claim based upon the City's action in providing a school zone, crosswalk, and warning sign which lacked an integral safety component, specifically, visible pavement markings and a sign which would have activated the school zone prior to the beginning of the "zero hour" classes. The trial court denied the plea to the jurisdiction on August 30, 1999. The City challenges that ruling in this interlocutory and accelerated appeal.

## WAIVER OF SOVEREIGN IMMUNITY UNDER SECTION 101.021(2)

In its first issue for review, the City contends that the Sullivans have failed to allege a waiver of sovereign immunity under Section 101.021(2) of the Texas Tort Claims Act because they have not alleged that a condition or use of tangible personal or real property directly caused Adam's injuries. Since governmental immunity from suit defeats a trial court's subject-matter jurisdiction, the City argues that the trial court erred in failing to grant its plea to the jurisdiction. *See Jones*, 8 S.W.3d at 639; *see Lamar University v. Doe*, 971 S.W.2d 191, 196 (Tex.App.— Beaumont 1998, no pet.)(when a lawsuit is barred by sovereign immunity, dismissal with prejudice for want of jurisdiction is proper).

### *Standard of Review*

A plea to the jurisdiction is a dilatory plea by which a party contests the trial court's authority to determine the subject matter of the cause of action. *City of Saginaw v. Carter*, 996 S.W.2d 1, 2 (Tex.App.—Fort Worth, 1999, no pet.); *State v. Benavides*, 772 S.W.2d 271, 273 (Tex.App.—Corpus Christi 1989, writ denied). The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *City of Saginaw*, 996 S.W.2d at 2. In the context of suit against a governmental unit, the plaintiff must allege consent to suit either by reference to statute or express legislative permission. *Jones*, 8 S.W.3d at 638; *Missouri Pac. R.R. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970); *Texas Parks & Wildlife Dept. v. Garrett Place, Inc.*, 972 S.W.2d 140, 143 (Tex.App.—Dallas 1998, no pet.). The question of subject-matter jurisdiction is a legal question which we review *de novo*. *City of Saginaw*, 996 S.W.2d at 2; *Texas Dept. of Health v. Doe*, 994 S.W.2d 890, 892 (Tex.App.—Austin 1999, pet. dism'd by agr.); *see Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999)(ripeness, as an element of subject-matter jurisdiction, is a legal question subject to *de novo* review). In reviewing the trial court's denial of a plea to the jurisdiction,

we look solely to the allegations in the petition and accept them as true. *See City of Saginaw*, 996 S.W.2d at 2–3; *Firemen's Ins. Co. v. Board of Regents of Univ. of Tex. Sys.*, 909 S.W.2d 540, 541 (Tex.App.—Austin 1995, writ denied). We do not examine the merits of the case. *See City of Saginaw*, 996 S.W.2d at 3. If the petition does not allege jurisdictional facts, the plaintiff's suit is subject to dismissal only when it is impossible to amend the pleadings to confer jurisdiction. *City of Saginaw*, 996 S.W.2d at 3; *see Texas Ass'n of Bus.*, 852 S.W.2d at 446; *Liberty Mut. Ins. Co. v. Sharp*, 874 S.W.2d 736, 739 (Tex. App.—Austin 1994, writ denied).

### Liability Under the Tort Claims Act

■■■ A municipality such as the City of Midland is immune from liability for its governmental functions unless that immunity is specifically waived. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex.1995); *Gonzales v. City of El Paso*, 978 S.W.2d 619, 622 (Tex.App.—El Paso 1998, no pet.). By designating warning signals, the regulation of traffic, engineering functions, and the maintenance of traffic signals, signs, and hazards as governmental functions,[2] the Legislature has imbued these functions with immunity unless a claim falls within one of three specific areas of liability for which immunity is waived by Section 101.021 of the Tort Claims Act—use of publicly owned vehicles or other motor-driven equipment; a condition of real property (premises liability); and the condition or use of tangible personal property. *See Medrano v. City of Pearsall*, 989 S.W.2d 141, 144 (Tex. App.—San Antonio 1999, no pet.); *McKinney v. City of Gainesville*, 814 S.W.2d 862, 865 (Tex.App.—Fort Worth 1991, no writ). The basis for liability in the latter two areas is found in Section

101.021(2) of the Tort Claims Act which provides that a governmental unit in the state is liable for:

> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2)(Vernon 1997).[3] However, in the case of a claim arising from the absence, condition, or malfunction of a traffic or road sign, signal, or warning device, a governmental unit will retain its immunity unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice. TEX.CIV.PRAC. & REM. CODE ANN. § 101.060(a)(2)(Vernon 1997). Thus, Section 101.060(a)(2) imposes a limitation on the waiver of immunity provided by Section 101.021(2).

■■■ To state a claim involving the "condition" of property, the plaintiff must allege that defective or inadequate property caused the injury. *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30, 31–32 (Tex.1983); *Garrett Place*, 972 S.W.2d at 143. The injury must be proximately caused by the condition or use of the property. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998); *Garrett Place*, 972 S.W.2d at 143. Proximate cause consists of both cause in fact and foreseeability. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury which would not otherwise have

---

**2.** *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(20), (21), (30), and (31)(Vernon Supp.2000).

**3.** Liability for premises defects is implied under Section 101.021(2) because premises defects arise from a condition existing on real property. *Lamar University*, 971 S.W.2d at 195. *See also* TEX.CIV.PRAC. & REM.CODE ANN. § 101.022 (Vernon 1997)(specifying duty owed for premise and special defects).

occurred. *Union Pump,* 898 S.W.2d at 775. The requirement of causation is more than mere involvement. *Bossley,* 968 S.W.2d at 343; *Garrett Place,* 972 S.W.2d at 143. Property does not cause injury if it does no more than furnish the condition that makes injury possible. *Bossley,* 968 S.W.2d at 343; *Garrett Place,* 972 S.W.2d at 143.

### Direct Causation

■ The City focuses its causation arguments on two different theories of recovery pled by the Sullivans: (1) that the defective or inadequate condition of tangible personal and real property proximately caused Adam's injuries; and (2) that the City provided a school zone, crosswalk, and warning sign which lacked an integral safety component.[4] Citing *Bossley,* the City argues that the Sullivans have incorporated the magic words of the Tort Claims Act but have failed to allege "*how* a condition or use of the City's tangible personal or real property *directly* caused Adam Sullivan's injuries. . . ."

In *Bossley,* a mental patient who had previously attempted to take his own life escaped from a county mental health facility through a door left unlocked as an employee exited during her lunch hour. During the subsequent pursuit by mental health facility personnel and police, the patient leaped into the path of a truck and was killed. The patient's estate and his parents sued the county mental health facility and certain of its employees. In response to the defendants' motion for summary judgment based on immunity grounds, the plaintiffs alleged that their claims came within the statutory waiver of immunity under Section 101.021(2) of the Tort Claims Act. *Bossley,* 968 S.W.2d at 341. Specifically, they alleged that their son's death was caused by the employee unlocking the outer door without first lock-

ing the inner door or checking on the patient's whereabouts. *Id.* The trial court granted the motion. *Id.* The Dallas Court of Appeals reversed the summary judgment, finding that the involvement of some condition or use of tangible property was sufficient to waive immunity under Section 101.021(2). *Id. citing Bossley v. Dallas County Mental Health and Mental Retardation,* 934 S.W.2d 689, 695 (Tex.App.—Dallas 1995). The Supreme Court reversed the intermediate court because the requirement of causation is more than mere involvement of tangible personal or real property. *Bossley,* 968 S.W.2d at 343. Property does not cause injury if it does no more than furnish the condition that makes the injury possible. *Id.* The Court noted that although the patient's escape through the unlocked doors was part of a sequence of events that ended in his suicide, the use and condition of the doors were too distant geographically, temporally, and causally from the patient's death to be said to have caused it. *Id.* Finally, the Court pointed out that the real substance of the plaintiffs' complaint was that the patient's death was caused not by the condition or use of property, but by the failure of the county mental hospital staff to restrain him once they learned he was suicidal. *Id.*

Likening this case to *Bossley,* the City maintains that the school zone and its attendant markers and warning signs were merely involved in the occurrence and did nothing more than furnish the condition which made the injury possible; they were not the actual instrumentality which caused Adam's injuries. The City also urges that *Bossley* stands for the proposition that the tangible personal or real property in question must directly cause the injury or death. We disagree with the

---

**4.** The City has raised the complaints pertaining to the second theory of recovery for the first time on appeal because the Sullivans added the theory pertaining to the lack of an integral safety component in its third amend- ed petition filed after the plea to the jurisdiction. Because subject-matter jurisdiction is an issue that may be raised at any time, we will address the arguments. *Texas Ass'n of Business,* 852 S.W.2d at 445.

City's interpretation of *Bossley* and its purported application to the facts here.

While the Supreme Court insisted in *Bossley* that proximate cause under Section 101.021(2) requires more than mere involvement of tangible personal or real property, it did not hold that the property be the actual instrumentality of the personal injury or death. Nor did it create some new requirement for a showing of proximate cause under Section 101.021(2). Instead, it adhered to traditional notions of proximate cause by finding that the unlocked doors were too attenuated from the patient's death to be said to have caused it. *See Union Pump*, 898 S.W.2d at 775 (noting that at some point in the causal chain, the defendant's conduct or product may be too remotely connected with the plaintiff's injury to constitute legal causation); *Michael v. Travis County Housing Authority*, 995 S.W.2d 909, 912–15 (Tex.App.—Austin 1999, no pet.)(noting that causation standard under Section 101.021(2) is that of proximate cause, not direct cause, immediate cause, or sole cause, and rejecting argument that *Bossley* requires showing that the property in question directly inflicted the injury).

■ We find *Bossley* distinguishable for the following reasons. Here, the pleadings allege that the motorist was unaware of the school zone and the likelihood that a student might be in the crosswalk due to the defective and inadequate condition of the pavement markers and the warning signs. Accordingly, the motorist traveled at an excessive rate of speed and was not on the lookout for students in the crosswalk. As alleged, the condition of the property, while not the sole factor, is nevertheless a substantial factor in bringing about Adam's injuries. The condition of the property is not so distant geographically, temporally, and causally from the accident as to require a conclusion that legal causation does not exist. The Sullivans are not attempting to use a complaint regarding the condition of the property and its tangential involvement in the inci-

dent to bring a non-actionable claim within the Tort Claims Act. The gravamen of the Sullivans' complaint actually relates to the defective and inadequate condition of the property, not to the negligent conduct of some City employee. The City's first argument is without merit.

■ The City also contends that the Sullivans' cause of action pertaining to the lack of an integral safety component in the school zone, crosswalk, and school zone sign fails to confer jurisdiction upon the trial court because it does not state a claim falling within Section 101.060. In asserting this cause of action, the Sullivans rely on the rule that a governmental unit may waive immunity under the use of tangible personal property portion of Section 101.021(2) if it provides equipment which is defective because it lacks an integral safety component. *See, e.g., Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169, 171 (Tex.1989)(state liable for employee's provision of swimming attire that did not include life preserver because that was use or condition of tangible personal property); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 300 (Tex.1976)(university liable for providing uniform without knee pad to football player because it was use or condition of tangible property); *Overton Memorial Hospital v. McGuire*, 518 S.W.2d 528, 529 (Tex.1975)(negligently providing hospital bed without bed rails is condition or use for which government is liable under Tort Claims Act); *Texas Department of Mental Health & Mental Retardation v. McClain*, 947 S.W.2d 694, 697 (Tex.App.—Austin 1997, writ denied)(lockers with removable metal rod and wheelchair with removable foot pedal lacked an integral safety component and the entity's negligent provision of the property proximately caused the plaintiff's injury). The Supreme Court has described *Robinson* and *Lowe* as the outer bounds of what it has defined as use of tangible personal property. *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex.1996). While the Sullivans assert that this rule also applies

to a condition or use of tangible real property such as the traffic and warning signs at issue here, none of the cases cited by them stand for that proposition and we are not inclined to extend the rule. Further, to the extent this theory of recovery relates to the use of the warning and traffic signs, it does not state an actionable claim under Section 101.060(a)(2) because it does not relate to the condition of the warning signs. The trial court erred in denying the City's plea to the jurisdiction but only as to this theory of recovery.[5] Accordingly, Issue One is overruled in part and sustained in part.

## LEGISLATIVE AND DISCRETIONARY FUNCTIONS

■ In the second issue, the City maintains that the Sullivans' theory of recovery pertaining to the failure of the crosswalk to comply with the mandates of MUTCD and the failure of the school zone to be operative thirty minutes prior to the beginning of the "zero hour" classes does not demonstrate a waiver of immunity because the pleadings describe non-actionable legislative and discretionary actions, and further, the pleadings do not allege what notice the City had of the alleged defects.[6] We turn to the pleadings:

> Plaintiffs further allege that the City owed a duty pursuant to the Texas Tort Claims Act, Section 101 et seq. to design, construct and install the crosswalk in accordance with the mandatory provisions outlined in Section 7C–3 of the Manual for Uniform Traffic Control Devices ('MUTCD'). The City was aware that the crosswalk did not comply with the requirements set forth in Section

7C–3 of the MUTCD. Further, the City owed a duty to maintain and repair the pavement markers installed by the City at the crosswalk location. The City conducted inspections of the crosswalk and was aware that the pavement markers were worn down, broken and in need of replacement. Despite such knowledge, the City failed to replace the damaged pavement markers and/or to bring the crosswalk into compliance with the MUTCD, so as to give accurate and sufficient warning to drivers of possible student-pedestrian traffic and, as a result, failed to protect Adam Sullivan while he was in the crosswalk. The defective condition created by the City's failure to design, construct and install the crosswalk in accordance with the MUTCD and/or its failure to maintain and repair the pavement markers created an unreasonable risk of harm to Adam Sullivan.

Plaintiffs further allege that the City owed Adam Sullivan the duty to warn him of the dangerous condition of the crosswalk and school zone or to make the conditions safe pursuant to Texas Tort Claims Act Section 101.022 and 101.060 et seq. Adam Sullivan was not aware that the crosswalk was not in compliance with the mandates of the MUTCD and that the pavement markers were not visible to drivers traveling south along 'A' street nor was he aware that the school zone was not operating at the time he crossed the street on his way to class. The City, however, had actual notice of the dangerous condition created by the school zone and the crosswalk. The City knew that Midland

---

**5.** Excluding the allegation pertaining to the provision of equipment which lacks an integral safety component, these same allegations state a cause of action under Section 101.060 insofar as they pertain to a condition of the traffic and warning signs. However, this theory is contained within the other pleadings.

**6.** The City has completely failed to brief its complaint regarding the asserted failure of

the pleadings to describe in what manner the City had notice of the defects. Accordingly, it is waived. *See* Tex.R.App.P. 38.1(h); *TXO Production Co. v. M.D. Mark, Inc.,* 999 S.W.2d 137, 143 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *CherCo Properties, Inc. v. Law, Snakard & Gambill, P.C.,* 985 S.W.2d 262, 266–67 (Tex.App.—Fort Worth 1999, no pet.).

High had zero hour classes starting at 7:30 a.m. and that the school zone would not protect students crossing the street for those classes. The City also knew that the crosswalk was not in compliance with the mandates of MUTCD Section 7C–3 and that the pavement markers needed to be replaced and/or repaired. Despite such knowledge, the City did not take any action to warn Adam Sullivan of the dangerous condition of the school zone or the crosswalk nor did it exercise ordinary care to make the condition safe. The defective conditions of the crosswalk and school zone created an unreasonable risk of harm to Adam Sullivan.

### Placement of Signs is Discretionary

██ Citing *State Department of Highways & Public Transportation v. King*, 808 S.W.2d 465, 466 (Tex.1991), the City first argues that the placement of traffic signs or warning devices is discretionary, and therefore, there is no liability arising out of either their placement or the failure to place them. Under Section 101.060(a)(1), a governmental unit is not liable for the failure to initially place a traffic or road sign, signal, or warning device if the failure is a result of the discretionary action of the governmental unit. TEX.CIV.PRAC. & REM.CODE ANN. § 101.060(a)(1)(Vernon 1997). In *King*, which involved the failure to place a sign near an intersection so as to prevent a motorist from entering a one-way access road while traveling the wrong direction, the Supreme Court held that MUTCD did not establish a mandatory duty to install particular traffic control devices. This case, however, does not concern the initial placement of the warning signs but rather addresses their condition after having been placed, i.e., the visibility of the pavement markers due to disrepair and the failure of the school zone sign to activate the school zone thirty minutes prior to class. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.060(a)(2)(Vernon 1997). Therefore,

the City's reliance on Section 101.060(a) and *King* is misplaced.

### Failure to Allege a "Condition" Under Section 101.060

██ Complaining that the Sullivans have not alleged any defective conditions of the crosswalk and warning signs, the City urges that the pleadings have not stated a premises defect claim under Section 101.060(a)(2). Similar to its argument raised in the first issue, the City also contends that the condition of the warning signs and school zone signs is not really a premises defect but is merely a condition of the City's premises which furnished the circumstances in which the accident occurred. In support of the latter argument, it cites *Laman v. Big Spring State Hosp.*, 970 S.W.2d 670 (Tex.App.—Eastland 1998, pet. denied). There, Laman was admitted to the Southwest Psychiatric Services Unit at the Big Spring State Hospital. After she became agitated, combative, and delusional, the staff escorted her to a "change-of-environment" room which was located in the men's side of the unit. A doctor prescribed a sedative and Laman was left alone in the unlocked room after she fell asleep. A short time later, Laman was raped by a male patient. She filed suit against the state hospital, alleging that she was injured as a result of a condition or use of the room in which she was assaulted, the room having been: (1) unlocked with the door open to the men's hall; (2) unstaffed; and (3) occupied only by a heavily-sedated female patient. Laman alleged that the condition of the room constituted a premises defect, that the use of the room in that condition constituted a misuse of tangible property, and that the use of the room constituted the negligent implementation of policy. *Laman*, 970 S.W.2d at 671. The trial court granted summary judgment in favor of the State based upon sovereign immunity. The Eastland Court of Appeals found that the facts did not support a cause of action for a premises defect because they did not involve a defect, shortcoming, or imperfection of the

room or the door. *Id.* at 672. We first find *Laman* factually distinguishable. Second, we reject the City's argument to the extent it raises the same contention addressed in Issue One.

In urging that the Sullivans have failed to allege a premises defect cause of action because they do not describe a defect or shortcoming in the crosswalk or warning signs, the City relies exclusively on the definition of "premises defects" found in *Billstrom v. Memorial Medical Center,* 598 S.W.2d 642, 646 (Tex.Civ. App.—Corpus Christi 1980, no writ):

> The word 'premises' is commonly defined as 'a building or part of a building with its grounds or other appurtenances.' The word 'defect' is commonly defined as a 'shortcoming, imperfection' or 'want of something necessary for completeness.'

While we do not disagree with *Billstrom's* definition of premises defect, the case did not involve Section 101.060(a)(2). The term "condition" as it is used in Section 101.060(a)(2) refers to the maintenance of a sign or signal in a condition sufficient to properly perform the function of traffic control for which it is relied upon by the traveling public. *Lawson v. McDonald's Estate,* 524 S.W.2d 351, 356 (Tex.Civ. App.—Waco 1975, writ ref'd n.r.e.); *see also Creek v. Texas State Dept. of Highways and Public Transp.,* 826 S.W.2d 797, 802 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Further, the term refers to either an intentional or inadvertent state of being. *Sparkman v. Maxwell,* 519 S.W.2d 852, 857–58 (Tex.1975). Applying this rule, the question is whether the Sullivans' pleadings allege that the pavement markers and school zone warning signs were installed and maintained in a condition insufficient to properly perform the function of traffic control for which they are relied upon by the traveling public.

We find that the pleadings adequately state such an allegation.

The Sullivans first alleged that the pavement markings lacked visibility due to their state of disrepair, and consequently, failed to warn the motorist that students might be crossing at that particular point in the school zone. We find that this allegation adequately states a premises defect cause of action based upon a condition of a warning sign.

The Sullivans also alleged that the school zone sign, due to its failure to activate the school zone at 7 a.m., failed to properly perform its intended function of requiring motorists to reduce their speed and be alert for students in the crosswalks. Citing *Bellnoa v. City of Austin,* 894 S.W.2d 821 (Tex.App.—Austin 1995, no writ), the City argues that when a sign accurately reflects a legislative enactment, such as the operative time period for the school zone, and it operates as intended by the governing body, then the complaint does not involve a "condition" of the sign. In support of its argument, the City directs our attention to Midland City Ordinance 7150 [7] which establishes the boundaries, hours, and applicable speed limits of all school zones within the Midland city limits, and more specifically, sets the hours of the Midland High school zone at 7:30 am. until 4:30 p.m. with a speed limit of 20 miles per hour.

In *Bellnoa,* two children were struck by a privately owned and operated vehicle while attempting to cross the street. One later died from his injuries. The parents sued the City of Austin, alleging various acts of negligence relating to the regulation of traffic. The trial court granted summary judgment in favor of the municipality based on sovereign immunity. On appeal, the plaintiffs alleged that the municipality was negligent in raising the speed limit from 30 to 40 miles per hour.

**7.** Although the City attached a copy of the ordinance as an appendix to its brief, it did not include a copy in its motion for summary judgment. Nevertheless, there is other summary judgment evidence that the established hours of the school zone are from 7:30 a.m. until 4:30 p.m.

*Bellnoa,* 894 S.W.2d at 825. The Austin Court of Appeals determined that the municipality could not be held liable for posting a traffic sign which accurately reflected the new speed limit, thus rejecting the plaintiffs' theory that the sign misled the public into believing that the new speed limit was safe and reasonable and that such a discrepancy was a "condition" of the sign. *Id.* The posted sign was merely an indication of the legal speed limit, and the source of the problem was the setting of the speed limit, not the posting or condition of the sign. *Id.* Furthermore, the municipality's decision to raise the speed limit was not actionable under the Tort Claims Act. *Id.* at 826.

The instant case presents the reverse situation. According to the summary judgment evidence, the City traffic engineer recommended that the school zones begin operation thirty minutes in advance of classes. The City adopted the recommendations of the City traffic engineer as its policy in Municipal City Ordinance 7150. Before the advent of "zero hour" classes, the Midland City Council had determined that the school zone should not begin operation until 7:30 a.m.—thirty minutes in advance of 8 o'clock classes. Unfortunately, the City Council failed to update Municipal City Ordinance 7150 and the school zone hours to take into account the promulgation of "zero hour" classes. Because the ordinance is erroneous and contrary to the City's own policy, this case is distinguishable from *Bellnoa.* Although the school zone signs are consistent with the ordinance, and thus, were functioning as designed, they were not functioning as desired or intended since the school zone did not come into operation thirty minutes in advance of classes as contemplated by the City traffic engineer and the ordinance. *Compare Sparkman,* 519 S.W.2d 852 (a stop light that displayed a red left-turn arrow, which confused some motorists into proceeding left on red, was a "condition" of the light for which the municipality could be held liable under the Texas Tort Claims Act) *with Alvarado v. City of Lub-*

*bock,* 685 S.W.2d 646, 648–49 (Tex.1985)(erroneous sign which stated that speed limit was 55 miles per hour when actual speed limit, as provided by city ordinance, was 50 miles per hour, involved absence of or condition of traffic sign for which governmental immunity has been waived). Accordingly, the trial court did not err in denying the City's motion for summary judgment as related to this allegation.

### Design of and Failure to Repair the Crosswalk

The City, citing Section 101.056 of the Civil Practice and Remedies Code, next contends that the Sullivans' complaints regarding the design of the crosswalk and the poor visibility of the pavement markers are not actionable because they are nothing more than complaints about discretionary decisions made by the City traffic engineer and the City Council. According to Section 101.056, waiver of sovereign immunity does not apply to a claim based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

Tex.Civ.Prac. & Rem.Code Ann. § 101.056 (Vernon 1997).

Whether a governmental activity is discretionary is a question of law. *State v. John San Miguel,* 2 S.W.3d 249, 251 (Tex.1999). The State preserves its immunity for formulating policy because it is a discretionary act. *Id.* Decisions about highway design and the type of safety features to install are discretionary policy decisions. *Id. citing Maxwell v. Texas Dep't of Transp.,* 880 S.W.2d 461, 463–64 (Tex.App.—Austin 1994, writ denied). A

court should not second-guess a governmental unit's decision about the type of marker or safety device that is the most appropriate. *Id.*

Before addressing which, if any, of the Sullivans' allegations concern discretionary actions on the part of the City, it is necessary to consider the Sullivans' contention that Section 101.056 does not apply to its claim regarding the condition of a warning device under Section 101.060(a)(2). The First Court of Appeals has held in two cases that Section 101.056 does not apply to claims arising from the absence of a warning device if the government knew of the problem and failed to act within a reasonable time. *See Reyes v. City of Houston,* 4 S.W.3d 459, 462 (Tex. App.—Houston [1st Dist.] 1999, pet. filed); *Harris County v. Demny,* 886 S.W.2d 330, 332 n. 1 (Tex.App.—Houston [1st Dist.] 1994, writ denied). This position is compelling when we consider that Section 101.060(a)(1) specifically provides immunity for the decision to initially place a traffic or road sign, signal or warning device if the failure is a result of discretionary action on the part of the governmental unit. Significantly, this retention of immunity due to the exercise of discretionary power is not found in Section 101.060(a)(2) or (a)(3). If Section 101.056 applies to Section 101.060 in its entirety as suggested by the City, then subsection (a)(1)'s language regarding discretionary action is redundant and the legislature's decision not to include this same language in subsections (a)(2) and (a)(3) is rendered meaningless. In interpreting a statute, we must presume that the legislature intended for the entire statute to be effective. *See* TEX. GOV'T CODE ANN. § 311.021(2)(Vernon 1998). Furthermore, an interpretation which refuses to apply Section 101.056 to claims under Section 101.060(a)(2) is consistent with other case law. While a governmental unit has discretion whether to initially place a sign or warning signal, it has a duty to exercise reasonable care in implementing a decision to install such a device. *See Zambory v. City of Dallas,* 838 S.W.2d 580, 582 (Tex.App.—Dallas 1992, writ denied). Accordingly, we agree with the First Court of Appeals that Section 101.056 does not apply to a claim brought under Section 101.060(a)(2).

The next question is whether the claims relating to the design of and failure to repair the crosswalk are brought under Section 101.060(a)(2). In addressing this issue, it is helpful to distinguish between the Sullivans' complaints regarding the design of the crosswalk and the poor visibility of the pavement markers due to their state of disrepair. As we have already determined, the allegations pertaining to disrepair of the pavement markers relates to their condition as that term is used in Section 101.060(a)(2). Accordingly, the trial court did not err in rejecting the City's argument that this is an exercise of discretionary power.

A different issue is presented, however, by the claim relating to the design of the crosswalk and its failure to comply with MUTCD. To the extent the Sullivans allege that the initial design of the crosswalk is defective because it did not comply with MUTCD, as opposed to a claim related to the negligent installation and failure to maintain the crosswalk and its markers, the claim is not brought under Section 101.060(a)(2) because it does not relate to the absence, condition, or malfunction of a traffic or road sign, signal, or warning device. Furthermore, the design of the crosswalk is a discretionary act for which the City retains its sovereign immunity by virtue of Section 101.056. *See San Miguel,* 2 S.W.3d at 251 (decisions about highway design and about what type of safety features to install are discretionary policy decisions for purposes of Section 101.056; thus, state's use of barrel and sign warning system was discretionary act for which state retained sovereign immunity); *see also King,* 808 S.W.2d at 466 (MUTCD is not mandatory and does not deprive state of discretion in deciding whether to install particular traffic control

device). Therefore, the trial court erred insofar as it denied the City's plea to the jurisdiction as to this allegation. However, the trial court properly concluded that the Sullivans are permitted to maintain their allegation that the City negligently installed and maintained the crosswalk. *See San Miguel,* 2 S.W.3d at 251 (distinguishing between complaint based on State's *decision to use* barrels as warning device, which is discretionary and not actionable, and claim that State *negligently placed* the barrels); *Villarreal v. State,* 810 S.W.2d 419, 421 (Tex.App.—Dallas 1991, writ denied)(noting that once the decision has been made to erect a particular sign, it must conform to the specifications of MUTCD).

### Posted Time Period on School Zone Signs

 Finally, we address the City's contention that the Sullivans, by alleging that the time posted on the school zone warning sign is a condition of property which contributed to Adam's injuries, are attempting to complain about the legislative decision of the City Council in setting the time period of the school zone. The Sullivans maintain that their pleadings properly state a cause of action for negligent implementation of a discretionary policy. We agree with the Sullivans. They alleged

> [T]hat the City owed a duty to correct the condition of the school zone and the school zone sign pursuant to Texas Tort Claims Act Section 101 et seq. The City had a non-discretionary policy and practice of starting all school zones at least thirty minutes prior to the start of classes. The City knew that the school zone on 'A' street was in violation of this policy. Despite such knowledge, the City failed to properly activate the school zone at the scene of the accident pursuant to the City policy and failed to properly mark and maintain the school zone and signage to reflect changes in school start times so as to give accurate and sufficient warning to drivers of pos-

sible student-pedestrian traffic and, as a result, failed to protect Adam Sullivan while he was in the school zone. The defective condition created by the City's failure to activate the school zone and school zone sign in accordance with established City policy created an unreasonable risk of harm to Adam Sullivan.

 It is well established that a municipality can be held liable for the negligent implementation of a discretionary act. *See Zambory,* 838 S.W.2d at 582 (where plaintiff brought suit against municipality under Section 101.060(a)(2) due to absence of traffic signal, city not entitled to sovereign immunity on ground that decision to delay installation of traffic signal was based on discretionary power because fact issue existed with regard to whether city had already determined that it should install a traffic signal, and thus, suit involved negligent implementation of a discretionary decision for which there is no sovereign immunity). Decisions incidental or related to the implementation of a discretionary or policy-formulated decision are not immune from liability. *Id. citing State v. Terrell,* 588 S.W.2d 784, 788 (Tex.1979). While the City's decision to establish a school zone and its hours of operation are certainly discretionary acts, it is subject to suit for negligent implementation of these decisions. The above allegations related to the failure of the City to update the school zone signs in accordance with its own policy and prior determination states a claim for negligent implementation of a discretionary decision. Therefore, the trial court did not err in denying the City's plea to the jurisdiction. For all of these reasons, Issue Two is sustained in part and overruled in part.

### NON–USE OF PROPERTY

 In its final issue, the City asserts that the design of a crosswalk at variance with MUTCD does not waive governmental immunity because MUTCD is not real property or tangible personal property such that its non-use is not actionable un-

der the Tort Claims Act. Similarly, the City argues that the asserted failure to follow its own policy does not constitute non-use of property under the Act. As pointed out by the Sullivans, this portion of the pleadings does not expressly allege and cannot reasonably be interpreted as containing any allegations related to the non-use of property, including non-use of MUTCD. Accordingly, Issue Three is overruled.

## CONCLUSION

Having sustained Issues One and Two in part, we reverse the order of the trial court and dismiss the Sullivans' allegations related to the use of the warning and traffic signs, and the initial design of the crosswalk, because it would be impossible to amend the pleadings to confer jurisdiction. Having overruled the remaining arguments raised in Issues One and Two, and Issue Three in its entirety, we affirm the trial court's order as so modified.

### *OPINION ON MOTION FOR REHEARING*

We issued our original opinion on July 27, 2000,[1] in which we affirmed in part and reversed in part the trial court's order denying the City's plea to the jurisdiction on sovereign immunity grounds. We find it necessary to address one of the arguments raised by the City in its motion for rehearing.

In its second ground for rehearing, the City challenges our rejection of its argument that the Sullivans' pleadings do not state a premises defect claim by alleging that the school zone sign failed to activate the school zone at 7 a.m. or thirty minutes in advance of zero hour classes. The City also argues that we exceeded the scope of our review by examining the evidence attached to the Sullivans' response.

On original submission, the City contended that the portion of the Sullivans'

pleadings alleging a failure of the school zone to be operative thirty minutes prior to the beginning of the "zero hour" classes does not demonstrate a waiver of immunity because the pleadings describe non-actionable legislative and discretionary actions. In support of its argument, the City attached to its brief a copy of Midland City Ordinance 7150 which establishes the boundaries, hours, and applicable speed limits of all school zones within the Midland city limits, and more specifically, sets the hours of the Midland High school zone at 7:30 a.m. until 4:30 p.m. with a speed limit of 20 miles per hour. The City had not attached the ordinance to its plea to the jurisdiction filed in the trial court, nor did it ask that court to take judicial notice of the ordinance. In fact, the City did not make this argument in its plea to the jurisdiction. Nevertheless, the City, citing *Bellnoa v. City of Austin*, 894 S.W.2d 821 (Tex.App.—Austin 1995, no writ), argued in this Court that when a sign accurately reflects a legislative enactment, such as the operative time period for the school zone, and it operates as intended by the governing body, then the complaint does not involve a "condition" of the sign. *City of Midland*, at 12 . In their written response to the plea to the jurisdiction, the Sullivans argued that the City's policy of starting all school zones thirty minutes in advance of classes is not discretionary, and in support of this assertion, they attached a copy of Gary Saunders' testimony.

Distinguishing *Bellnoa*, we originally held that while the school zone signs may have been consistent with Municipal City Ordinance 7150, the ordinance itself is erroneous because it is not in compliance with the City's policy of beginning all school zones thirty minutes in advance of classes. *City of Midland*, at 12. Thus, the school zone signs were not functioning as intended. *Id.* The City complains vociferously about our reference to Saunders'

---

**1.** *See City of Midland v. Sullivan*, 33 S.W.3d 1 (Tex.App.—El Paso, 2000, no pet. h.).

testimony in our original opinion, alleging that it is improper to look outside of the pleadings in passing upon a plea to the jurisdiction. The City, however, fails to address how it is possible for this Court to restrict our review to the face of the Sullivans' pleadings, yet at the same time, consider Municipal Ordinance 7150 in passing on its plea to the jurisdiction. If it is proper for this Court to take the ordinance into account, then ordinary notions of fair play suggest that the Sullivans should be permitted to respond by including relevant evidence in their response. Even if we must exclude the responsive evidence from our review of this issue, the Sullivans' pleadings specifically allege that the City had a non-discretionary policy of starting all school zones thirty minutes in advance of classes. As set forth in our original opinion, the Sullivans alleged that Midland High had zero hour classes starting at 7:30 a.m., but the school zone was not operating at the time Adam crossed the street on his way to class. *Id.* at 10. We also set forth the following portion of the pleadings in a different section of the opinion, but they are applicable as well to this issue:

> Plaintiffs allege that the City owed a duty to correct the condition of the school zone and the school zone sign pursuant to Texas Tort Claims Act Section 101 et seq. *The City had a non-discretionary policy and practice of starting all school zones at least thirty minutes prior to the start of classes.* The City knew that the school zone on 'A' street was in violation of this policy. *Despite such knowledge, the City failed to properly activate the school zone at the scene of the accident pursuant to the City policy and failed to properly mark and maintain the school zone and signage to reflect changes in school start times so as to give accurate and sufficient warning to drivers of possible student-pedestrian traffic and, as a result, failed to protect Adam Sullivan while he was in the school zone.* The defective

condition created by the City's failure to activate the school zone and school zone sign in accordance with established City policy created an unreasonable risk of harm to Adam Sullivan. [Emphasis added].

*Id.* at 12.

Taking these pleadings as true, as we must, we adhere to our holding that while the school zone signs may have been consistent with Municipal City Ordinance 7150, the school zone signs were not functioning as intended because the signs, like the ordinance, were erroneous and not in compliance with the City's policy of beginning all school zones thirty minutes in advance of classes. The City's motion for rehearing is overruled.