COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)


THE CARLTON FIRM, P.C. and
)
 

DEAN CARLTON,
)
 No. 08-03-00009-CV

)


 Appellants,
)
 Appeal from

)
 

v.
)
 68th District Court

)


CHARLES E. EDWARDS, )
 of Dallas County, Texas

JAMES BLYTH, and )


SHELDON E. FRIEDMAN, )
 (TC# 00-7299-C)

)


 Appellees.
)



MEMORANDUM OPINION



 The Carlton Firm, P.C. and Dean Carlton, collectively Carlton, appeal from adverse summary
judgments rendered in favor of Charles E. Edwards, James Blyth, and Sheldon E. Friedman,
collectively Appellees. Finding no error, we affirm.

FACTUAL SUMMARY


 ETS Payphones, Inc. (ETS) and ETS Management Services, L.L.C. (Management) 
composed the ETS affiliates (ETS Group) and were involved in the payphone industry. Charles
Edwards was the sole owner, director, and chief executive officer of ETS and the sole owner of
Management. James Blyth was chief operating officer of ETS and president of both ETS and
Management. Sheldon E. Friedman acted as Edwards' and ETS Group's attorney.

 Phoenix Telecom was in the business of selling, maintaining, and leasing pay phones. 
Carlton served as Phoenix's general counsel. In October 1999, Carlton moved into Phoenix's offices
due to the high demand for his services and he referred his remaining clients to other attorneys. At
that time, Carlton and Phoenix entered into an employment contract providing for: (1) a term of
three years, (2) a salary of $20,000 monthly or $720,000 over the three-year term, (3) a car allowance
of $500 monthly or $18,000 over the term, (4) payment of overhead for Carlton's law office
averaging $10,000 monthly or $360,000 over the term, and (5) all customary benefits.

 In May 2000, Phoenix was faced with bad publicity from state regulators which resulted in
lower sales, higher rescissions, and a cash deficit. Consequently, it entered into negotiations with
ETS for the sale of its assets and the assumption of its liabilities. An asset purchase agreement was
finalized on July 17, 2000, with ETS acquiring some of Phoenix's assets and assuming some of its
liabilities. ETS did not assume Phoenix's employment contract with Carlton.

 Carlton filed suit on September 15, 2000 for breach of contract, intentional interference with
a contract, intentional infliction of emotional distress, and fraudulent conveyance. He contended that
when Appellees realized Phoenix's precarious position, they devised a scheme to acquire all of the
assets without paying fair value. They purportedly effectuated this scheme by delaying negotiations
until Phoenix's cash was depleted to the point of bankruptcy. ETS then reneged on its promise to
assume all of the company's obligations. Once ETS and Management took control of Phoenix's
cash, they approved payments to only certain creditors. Carlton was not one of them.

PROCEDURAL SUMMARY


 This case is procedurally driven and complicated by the intervening bankruptcy of one of the
named corporate defendants. Management filed for bankruptcy on September 21, 2000. On July 2,
2001, Carlton filed an amended request for admissions and production of documents. When
Appellees filed a suggestion of bankruptcy on July 31, the trial court granted an automatic stay and
administratively closed the case. Specifically, the order provided:

 Pursuant to the bankruptcy, an automatic stay of the action is in effect. In an effort
to manage my docket more efficiently, the above-styled and numbered cause will be
closed administratively subject to being re-opened upon motion of either party after
the bankruptcy has concluded. 


 The rights of the parties shall continue until (90) days after the related bankruptcy
proceedings are concluded.


Although no motion to reinstate was ever filed, Carlton did file a motion for a revised scheduling
order. A hearing was conducted on August 28 at which the trial judge confirmed the ninety day
abatement subject to an agreement of the parties with respect to a scheduling order. Carlton filed
an amended petition on September 4 which excluded Management as a defendant. Within roughly
a week, Appellees filed a motion for protective order seeking advice from the court on the requested
admissions as well as objections to the request. Thereafter, Carlton filed a motion to compel seeking
an order of deemed admissions. At a hearing on October 17, the trial court gave Appellees until
October 22 to respond to the discovery requests. Appellees responded timely.

 In February 2002, Appellees filed individual motions for summary judgment under Rules
166a(i) and 166a(c). They also filed a motion to withdraw deemed admissions, if any. This latter
motion was granted on June 14. Summary judgment was granted on October 7. Because the issue
of deemed admissions affects our consideration of the merits of summary judgment, we begin our
analysis there.

DEEMED ADMISSIONS


 In Point of Error No. Three, Carlton complains that the trial court disregarded the deemed
admissions in granting summary judgment. Once an action is filed, a party can serve written requests
for admissions. Tex.R.Civ.P. 198.1. If the party does not respond within thirty days of service, the
requests are deemed admitted without a court order, and the trial court has no discretion to find
otherwise. Tex.R.Civ.P. 198.2. A matter admitted is conclusively established as to the party making
the admission unless the court permits the party to withdraw or amend the admission. Tex.R.Civ.P.
198.3. The court may allow withdrawal or amendment of deemed admissions if the party shows
good cause, the party relying upon the deemed admissions will not be unduly prejudiced, and the
presentation of the merits of the action will be served by allowing amendment or withdrawal. 
Tex.R.Civ.P. 198.3.

 The trial court has broad discretion in allowing withdrawal and amendment of deemed
admissions, and we will reverse only for an abuse of discretion. See North River Ins. Co. of N.J. v.
Greene, 824 S.W.2d 697, 700 (Tex.App.--El Paso 1992, writ denied); Credit Car Center, Inc. v.
Chambers, 969 S.W.2d 459, 462 (Tex.App.--El Paso 1998, no writ). A trial court abuses its
discretion only if it acts without reference to guiding rules or principles or acts arbitrarily or
unreasonably. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). The
objective of the rules is to obtain a just, fair, equitable, and impartial adjudication of the rights of
litigants. See Tex.R.Civ.P. 1. The purpose of Rule 198 is to "simplify trials by eliminating matters
about which there is no real controversy, but which may be difficult or expensive to prove. It was
never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause
of action or ground of defense." Stelly v. Papania, 927 S.W.2d 620, 622 (Tex. 1996), quoting
Sanders v. Harder, 148 Tex. 593, 227 S.W.2d 206, 208 (Tex. 1950). The rules should not be
construed as a trap to prevent a litigant from presenting the truth to the trier of facts. Greene, 824
S.W.2d at 700. A party may show good cause by demonstrating that its failure to file was not
intentional or in conscious disregard of its obligation to answer the requests. City of Houston v.
Riner, 896 S.W.2d 317, 319 (Tex.App.--Houston [1st Dist.] 1995, writ denied); Chambers, 969
S.W.2d at 462.

 We first note that the trial court succinctly framed the issue: What is the effect of the prior
discovery order that was served on the parties in violation of the bankruptcy stay? Carlton argued
that the bankruptcy was not an issue, since the automatic stay operated only against the debtor, not
against non-debtors, co-debtors, co-tortfeasors, or co-defendants. See GATX Aircraft Corp. v. M/V
Courtney Leigh, 768 F.2d 711, 716 (5th Cir. 1985). While we agree that the non-debtor, co-defendants were not entitled to a stay, the parties were nevertheless bound by the judge's order which
administratively closed the case until the conclusion of the bankruptcy and upon motion of a party.

 Once the defendant in bankruptcy was eliminated from the case, the parties began some
procedural posturing with regard to the admissions. The trial court did not specifically decide
whether there were any deemed admissions. Instead, the following exchange occurred:

 COUNSEL: Your honor, just to clarify, are you finding that there were deemed
admissions then?


 THE COURT: I -- really with the confusion there -- that confusion of these orders
is enough good cause to allow withdrawal. I'm not going to reach that. Ya'll can
argue those semantics up there on appeal. I have to liberally construe it.


The court then concluded that Appellees had established good cause to allow withdrawal and
amendment of their deemed admissions, if there were any. The court also determined that Carlton
would not be unduly prejudiced and that the presentation of the case would be better served by
permitting the withdrawal.

 As the court rightfully noted, there was some confusion on the discovery deadlines because
of the bankruptcy. Although Appellees' response would have been due on August 3, 2001, the case
was administratively closed on July 31. We are hard pressed to fault Appellees for their reliance
upon the order and their apparent belief that no deadlines were in effect. Once Management was
dismissed as a defendant, the case proceeded and as a precaution, Appellees filed their motion to
withdraw the deemed admissions, if any there were.

 A trial court's failure to allow withdrawal of deemed admissions constitutes an abuse of
discretion where the attorney made an improper calculation as to the thirty-day response period,
where the attorney incorrectly docketed the response date and filed responses three weeks after
realizing his error, and where an attorney prepared handwritten answers to requests but failed to file
the answers and filed them three months late after notifying opposing counsel of his error. See
Chambers, 969 S.W.2d at 462-63, citing Cudd v. Hydrostatic Transmission, Inc., 867 S.W.2d 101,
105 (Tex.App.--Corpus Christi 1993, no writ); Greene, 824 S.W.2d at 701; Employers Ins. of
Wausau v. Halton, 792 S.W.2d 462, 466-67 (Tex.App.--Dallas 1990, writ denied). Here, the judge
found good cause for Appellees' failure to respond to request for admissions by the original due date
of August 3. We agree. We also agree with the court's conclusion that Carlton would not be unduly
prejudiced. Carlton suggests that the prejudice lies in the fact that he could not rely upon the
admissions in securing summary judgment in his favor. That will customarily be the case if deemed
admissions are not withdrawn or amended. Were that the only consideration, the rule would be
eviscerated. There was no evidence indicating that Carlton relied on the admissions in preparing the
case nor that there was insufficient time in which to conduct further discovery. The judge even
commented that he would delay any ruling on the motions for summary judgment in order to give
Carlton an opportunity to properly respond. Finding no abuse of discretion, we overrule Point of
Error No. Three.

OBJECTIONS TO AFFIDAVIT


 In Point of Error No. Six, Carlton contends that the trial court erred in sustaining Appellees'
objections to his affidavit submitted in response to the motions for summary judgment. We conclude
that this issue has been waived for three reasons. First, Carlton filed two affidavits but his brief fails
to identify to which affidavit his complaint applies. Second, he challenges the objection as to lack
of personal knowledge, without addressing the other objections which Appellees urged, including
hearsay, speculation, and conclusion. See Tex.R.App.P. 38.1(e). Third, Carlton has not properly
briefed this point of error since he has failed to include argument and citation to appropriate
authority. See Tex.R.App.P. 38.1(h); City of Midland v. Sullivan, 33 S.W.3d 1, 10 n.6 (Tex.App.--El
Paso 2000, pet. dism'd w.o.j.). Point of Error No. Six is overruled.

NO-EVIDENCE SUMMARY JUDGMENT


 Points of Error Nos. One and Two will be discussed together. In Point of Error No. One,
Carlton generically complains that the trial court erred in granting summary judgment. In Point of
Error No. Two, he challenges the propriety of the judgment as it specifically relates to intentional
interference with a contract. Tortious interference with a contract requires the following elements:
(1) the existence of a contract subject to interference, (2) the act of interference was willful and
intentional, (3) such intentional act was a proximate cause of plaintiff's damage and (4) actual
damage or loss occurred. Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 939 (Tex. 1991),
quoting Juliette Fowler Homes v. Welch Associates, 793 S.W.2d 660, 664 (Tex. 1990).

 Edwards and Blyth filed traditional motions for summary judgment under Rule 166a(c)
alleging that as a matter of law, their conduct did not constitute tortious interference with a contract. 
See J.L. Davis v. Hydpro, Inc., 839 S.W.2d 137, 139 (Tex.App.--Eastland 1992, writ denied);
Restatement (second) of torts § 766 cmt. n. (1979). They also filed no-evidence motions under
Rule 166a(i), alleging there was no evidence of any act of interference, no evidence that any act of
interference was willful and intentional, no evidence that any willful and intentional act proximately
caused damage to Carlton, and no evidence that Carlton suffered actual loss or damage. Friedman
filed a no-evidence summary judgment on the ground that there was no evidence he committed an
intentional and willful act of interference. 

 A no-evidence summary judgment is proper only when the non-movant fails to prove there
is a genuine issue of material fact on one or more of the elements identified in the motion.
Tex.R.Civ.P. 166a(i). A no-evidence summary judgment is essentially a pretrial directed verdict,
and we apply the same legal sufficiency standard that we apply in reviewing a directed verdict. 
Marsaglia v. University of Texas, El Paso, 22 S.W.3d 1, 3 (Tex.App.--El Paso 1999, pet. denied).
The motion should be granted if the non-movant fails to bring forth more than a scintilla of probative
evidence to raise a genuine issue of material fact as to an essential element of the non-movant's claim
on which the non-movant would have the burden of proof at trial. Marsaglia, 22 S.W.3d at 4. If the
evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to
differ in their conclusions, then more than a scintilla of evidence exists. Marsaglia, 22 S.W.3d at
4. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than
create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. 
Marsaglia, 22 S.W.3d at 4.

 The evidence offered by Carlton in the response to the motions fails to meet the scintilla
standard. After Appellees' objections were granted as to Carlton's supporting affidavits and
depositions, the remaining evidence offers but a weak attempt at rebuttal and creates no more than
a mere surmise or suspicion as to the Appellees' conduct. Carlton presented no evidence that
Appellees intentionally or willfully interfered with a contract in the course of their negotiations. 
Because Carlton falls short of meeting the burden, Points of Error Nos. One and Two are overruled. 
And because we have concluded that summary judgment was proper based upon the no-evidence
motions, we need not decide whether summary judgment was proper under Rule 166a(c). 
Consequently, Points of Error Nos. Four and Five are overruled.

 Finally, in Point of Error No. Seven, Carlton contends that the motions for summary
judgment failed to sufficiently specify the grounds relied upon. In support of his argument, he
directs our attention to Johnson v. Brewer & Pitchard, 73 S.W.3d 193 (Tex. 2002). Brewer
addressed the existence of a fiduciary duty between an associate and his new partner (defendants)
and the associate's former firm (plaintiffs). The defendants moved for summary judgment claiming
that an associate did not owe a fiduciary duty to the employing law firm. Brewer, 73 S.W.3d at 203-04. The court decided that the defendants were not entitled to summary judgment on the ground
alleged because the associate did indeed owe a duty to the firm under the facts presented. Brewer,
73 S.W.3d at 204. Inasmuch as the defendants had not alleged that there was no evidence of a
breach of fiduciary duty, summary judgment would not be proper on that basis. Brewer, 73 S.W.3d
at 204. "A court cannot grant summary judgment on grounds that were not presented." Brewer, 73
S.W.3d at 204. Such is not the case here. Appellees sufficiently stated the grounds upon which they
were moving for summary judgment and stated the elements to which there was no evidence under
Rule 166a(i). Point of Error No. Seven is overruled.


REQUEST FOR SANCTIONS


 Friedman has sought appellate sanctions, alleging that Carlton's appeal is frivolous as it
pertains to him because of briefing violations and because specific arguments Carlton has urged with
regard to Edwards and Blyth are not applicable to him. An appellate court may award damages for
frivolous appeals pursuant to Rule 45. See Tex.R.App.P. 45. Appellate sanctions will be imposed
only if the record clearly shows that the appellant has no reasonable expectation of reversal, and the
appellant has not pursued the appeal in good faith. The courts of appeals have recited four factors
which tend to indicate that an appeal is frivolous: (1) the unexplained absence of a statement of
facts; (2) the unexplained failure to file a motion for new trial when it is required to successfully
assert factual sufficiency on appeal; (3) a poorly written brief raising no arguable points of error; and
(4) the appellant's unexplained failure to appear at oral argument. Faddoul, Glasheen & Valles, P.C.
v. Oaxaca, 52 S.W.3d 209, 213 (Tex.App.--El Paso 2001, no pet.). While Carlton's briefing is not
without fault, we are not of the opinion that it rises to the level necessary to warrant sanctions. 
Friedman's request for sanctions is denied. The judgment of the trial court is affirmed.


March 18, 2004 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 1

Larsen, McClure, and Chew, JJ.