Affirmed in Part, Reversed and Remanded in Part, Reversed and Rendered
in Part, and Majority and Dissenting Opinions filed June 15, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00244-CV

___________________

 

TEXAS DEPARTMENT OF TRANSPORTATION, Appellant

 

V.

 

ZULEIMA OLIVARES, INDIVIDUALLY AND AS THE
REPRESENTATIVE OF THE ESTATE OF PEDRO OLIVARES, JR., AND PEDRO OLIVARES,
INDIVIDUALLY, Appellees



 



 

 

On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 2008-19417



 



 

 

O P I N I
O N

            Texas Department of Transportation (“TxDOT”) presents this
accelerated appeal from the trial court’s denial of its plea to the
jurisdiction.  In its plea, TxDOT challenged the trial court’s subject-matter
jurisdiction over claims brought by Zuleima Olivares, individually and as
representative of the estate of Pedro Olivares, Jr., and Pedro Olivares
(collectively, “appellees”).  

TxDOT argues it is entitled to sovereign immunity relative to
all of appellees’ claims.  In a separate appeal, Fort Bend County Toll Road
Authority (“FBCTRA”), TxDOT’s co-defendant in the underlying lawsuit, also
challenges the trial court’s denial of its plea to the jurisdiction.  For
reasons outlined below, we affirm in part, reverse and render in part, and
reverse and remand in part.

I.   Background

            On January 1, 2007, Pedro Olivares, Jr. and his wife were
traveling westbound on the Westpark Tollway (“Tollway”) near Dairy Ashford Road
in Harris County when they were struck by a vehicle driven by Michael Ladson.  According
to appellees, Ladson was traveling on the Tollway in the wrong direction after
entering the westbound lanes near Gaston Road in Fort Bend County,
approximately eight and one-half miles from the accident scene.  Gaston Road
intersects with FM 1093, a state road controlled by TxDOT, which merges into
the Tollway.  Pedro Olivares, Jr. sustained severe bodily injuries resulting in
death.

In their second amended petition, appellees assert claims
against TxDOT, Fort Bend County, FBCTRA, Harris County, Harris County Toll Road
Authority (“HCTRA”), Brown and Gay Engineers, Inc., and Michael Stone
Enterprises, Inc.  The Estate of Michael Ladson has been designated as a
responsible third party.  Appellees allege TxDOT is liable for certain premise
defects and negligent acts or omissions involving the intersection at FM
1093-Gaston Road and the Tollway.  Appellees also contend TxDOT is liable under
a joint-enterprise theory.

            TxDOT filed a combined plea to the jurisdiction and
no-evidence motion for summary judgment, which was later supplemented.[1]  Appellees subsequently
amended their petition twice and filed a response to TxDOT’s plea.  On February
19, 2009, the trial court signed an order denying TxDOT’s combined plea and
motion.  TxDOT now appeals the trial court’s denial of its plea to the
jurisdiction. 

 

II.   Interlocutory Appeal and Standard of Review

We have statutorily-conferred authority to review the trial
court’s interlocutory order denying TxDOT’s plea to the jurisdiction.  See
Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon 2008) (A party may
appeal an interlocutory order that “grants or denies a plea to the jurisdiction
by a governmental unit . . . .”).  Appellate courts strictly construe statutes
authorizing interlocutory appeals.  See State v. Fiesta Mart, Inc., 233
S.W.3d 50, 54 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  Subsection
51.014(a)(8) authorizes an appeal only when the trial court grants or denies a
plea to the jurisdiction.  An appellate court must consider challenges to the
trial court’s subject-matter jurisdiction on interlocutory appeal, regardless of
whether such challenges were presented to or determined by the trial court. 
See Waco Indep. Sch. Dist.
v. Gibson, 22 S.W.3d
849, 850–51 (Tex. 2000).[2]

We review the trial court’s ruling on a plea to the
jurisdiction de novo.  Tex. Dep’t of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 228 (Tex. 2004).  In a plea to the jurisdiction, a party may challenge
either the pleadings or existence of jurisdictional facts.  Id. at 226–27; see
also Rebecca Simmons & Suzette Kinder Patton, Plea to the
Jurisdiction: Defining the Undefined, 40 St. Mary’s L.J. 627, 651–52 (2009).

When a defendant challenges the plaintiff’s pleadings, the
court’s determination turns on whether the pleader has alleged facts sufficient
to demonstrate subject-matter jurisdiction.  Miranda,
133 S.W.3d at 226.  To make this determination, courts should glean the
pleader’s intent and construe the pleadings liberally in favor of jurisdiction. 
 Id.  If the pleadings do not contain facts sufficient to affirmatively
demonstrate the trial court’s jurisdiction, but do not affirmatively demonstrate
incurable defects in jurisdiction, the issue is one of pleading sufficiency and
plaintiffs should be
afforded an opportunity to amend.  Id. at 226–27.  If the
pleadings affirmatively negate jurisdiction, a plea may be granted without allowing plaintiffs an opportunity
to amend.  Id. at 227.  The opportunity to amend pleadings that are insufficient to establish,
but do not affirmatively negate, jurisdiction arises after a court determines
the pleadings are insufficient.  White v. Robinson, 260 S.W.3d 463,
475–76 (Tex. App.—Houston [14th Dist.] 2008, pet. granted) (citing Tex.
A & M Univ. Sys. v. Koseoglu, 233 S.W.3d 835, 839–40 (Tex. 2007)).

When a defendant challenges the existence of jurisdictional
facts, we consider relevant evidence submitted by the parties.  Miranda,
133 S.W.3d at 227.  We take as true all evidence favorable to the nonmovant and
indulge every reasonable inference and resolve any doubts arising from such
evidence in the nonmovant’s favor.  Id. at 228.  If the relevant
evidence is undisputed or a fact question is not raised relative to the
jurisdictional issue, the trial court rules on the plea to the jurisdiction as
a matter of law.  Id.  If the evidence creates a fact question regarding
the jurisdictional issue, the trial court cannot grant the plea, and the fact
issue will be resolved by the fact finder.  Id. at
227–28.

When resolution of an issue requires interpretation
of a statute, we review under a de
novo standard.  Mokkala v. Mead, 178 S.W.3d
66, 70 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  In construing a statute, our objective is to determine
and give effect to the legislature’s intent.  See Nat’l Liab. & Fire
Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000).  If possible, we must
ascertain that intent from the language the legislature selected and should not
refer to extraneous matters for intent not expressed in the statute. 
Id.  If the meaning of the statutory language is unambiguous, we adopt
the interpretation supported by the plain meaning of the
words.  St. Luke’s Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex.
1997).

 

 

III.   Analysis

            TxDOT contends the trial court lacks jurisdiction over appellees’
claims because they cannot demonstrate TxDOT’s sovereign immunity has been
waived.  Disposition of whether immunity has been waived is governed by the
Texas Tort Claims Act (“TTCA”).  See Tex. Civ. Prac. & Rem. Code
Ann. §§ 101.001–.109 (Vernon 2005 & Supp. 2009).

A.        Texas Tort Claims Act

            Under our common law, sovereign or governmental immunity defeat
a trial court’s subject-matter jurisdiction.  See Harris County v. Sykes,
136 S.W.3d 635, 638 (Tex. 2004).  The TTCA provides a limited waiver of
immunity for “personal injury and death so caused by a condition or use of
tangible personal or real property if the governmental unit would, were it a
private person, be liable to the claimant according to Texas law.”  Tex. Civ.
Prac. & Rem. Code Ann. § 101.021 (Vernon 2005).  For premise-defect claims,
the governmental unit generally “owes to the claimant only the duty that a
private person owes to a licensee,” unless the claim involves special defects
or “the duty to warn of the absence, condition, or malfunction of
[traffic-control devices] as is required by Section 101.060.”  Id. §
101.022(a), (b) (Vernon 2005 & Supp. 2009).

However, there are certain exceptions to waiver of immunity
under the TTCA.  There is no waiver when a claim arises from

(1) the failure of a governmental unit to
perform an act that the unit is not required by law to perform; or 

(2) a governmental unit’s decision not to
perform an act or on its failure to make a decision on the performance or
nonperformance of an act if the law leaves the performance or nonperformance of
the act to the discretion of the governmental unit. 

Id. § 101.056
(Vernon 2005).  “In other words, the State remains immune from suits arising
from its discretionary acts and omissions.”  Tex. Dep’t of Transp. v. Garza, 70
S.W.3d 802, 806 (Tex. 2002).  Similarly, under subsection 101.060(a), the
TTCA does not waive immunity as to claims arising from

(1) the failure of a governmental unit initially to
place a traffic or road sign, signal, or warning device if the failure is a
result of discretionary action of the governmental unit; 

(2) the absence, condition, or malfunction of a
traffic or road sign, signal, or warning device unless the absence, condition,
or malfunction is not corrected by the responsible governmental unit within a
reasonable time after notice[.]

Tex. Civ. Prac. & Rem. Code Ann. § 101.060(a)(1)-(2) (Vernon 2005).  “Under subsection
(a)(1), the State retains immunity for discretionary sign-placement
decisions.”  State ex rel. State Dep’t of Highways and Pub. Transp. v.
Gonzalez, 82 S.W.3d 322, 326–27 (Tex. 2002).  “Under subsection (a)(2), the
State retains immunity as long as it corrects a sign’s defective [condition,
absence, or malfunction] within a reasonable time after notice.”  Id.

B.        TxDOT’s Duties Relative to the Tollway

TxDOT first contends that it had no legal duties relative to
the Tollway.  TxDOT argues that certain evidence, which was submitted to the
trial court in support of other jurisdictional issues, establishes that it did
not own or control the Tollway during the relevant period of time.[3] 
This argument was not raised in TxDOT’s plea to the jurisdiction, and, thus, appellees
did not present responsive evidence or argument in the trial court.  In their
brief, appellees neither dispute the evidence referred to by TxDOT nor argue
they should be afforded an opportunity to file responsive evidence.  Nevertheless,
assuming without deciding that TxDOT can stage an evidentiary challenge for the
first time on interlocutory appeal, TxDOT’s challenge is not meritorious because
the referenced evidence does not conclusively negate TxDOT’s responsibilities
relative to the Tollway.

In its brief, TxDOT explains that the Tollway crosses through
Harris County and Fort Bend County.  Appellees allege that the accident
occurred in the Harris County segment.  TxDOT argues it had no duty to
maintain, monitor, or operate the Harris County segment, but does not reference
any supporting evidence.  Therefore, on this record, TxDOT’s evidentiary
challenge concerning the Harris County segment lacks merit.

As for the Fort Bend County segment, TxDOT refers to its agreement
with FBCTRA (“TxDOT-FBCTRA agreement”).  The TxDOT-FBCTRA agreement provides
that FBCTRA is responsible for maintenance of the main lanes and ramps of the
Fort Bend County segment upon completion of the “Project.”[4] 
However, TxDOT did not present any evidence indicating that the “Project” had
entered the post-completion stage at the time of the accident.[5] 
The evidence does not conclusively negate TxDOT’s responsibilities relative to
the Fort Bend County segment.  Accordingly, even if TxDOT may challenge the
evidence supporting the duty element of appellees’ Tollway-related claims for
the first time on interlocutory appeal, its challenge lacks merit on this
record.  We also conclude that appellees’ pleadings are facially sufficient to
affirmatively plead TxDOT’s duty relative to the Tollway.

C.        Claims Based on Traffic-Control Devices

            TxDOT next challenges appellees’ claims concerning placement,
maintenance, and quality of traffic-control devices at or around the FM
1093-Gaston Road intersection.  TxDOT generally argues that these allegations
involve exercise of discretion for which immunity is not waived under the TTCA.

1.         Failure to Install Traffic-Control Devices

            TxDOT challenges for the first time on appeal appellees’
allegation that it failed to install “non-discretionary” signs and devices
after receiving “notice” that such signs and devices were necessary.  TxDOT
argues these claims are barred because they pertain solely to discretionary
acts.  TxDOT also challenges appellees’ allegations that it designed but failed
to install warning flashers and cameras intended to monitor traffic for safety.

In City of Grapevine v. Sipes, the Texas Supreme Court considered
whether a city’s failure to install a traffic signal, after deciding to do so, fell
under the portion of subsection 101.060(a)(2) allowing claims to be brought
under the TTCA when the absence of a traffic-control device is not remedied
within a reasonable time after notice.  195 S.W.3d 689, 692–95 (Tex.
2006).  Construing subsection 101.060(a)(2) in light of subsection
101.060(a)(1), the court concluded that timing of implementation is
discretionary:

When the
City first installs a traffic signal is no less discretionary than whether
to install it.  The timing of implementation could be affected by the
governmental unit’s balancing of funding priorities, scheduling, traffic
patterns, or other matters; to impose liability for the failure to timely
implement a discretionary decision could penalize a governmental unit for
engaging in prudent planning and paralyze it from making safety-related
decisions.  This sort of planning and execution is precisely the type of
discretionary act for which the TTCA retains immunity.  Thus, when subsections
(a)(1) and (a)(2) are read together, (a)(2) logically applies only to those
traffic signals that have already been installed.

Id. at 694. 
Therefore, TxDOT retained discretion regarding when to install the
warning flashers.  Although section 101.060 applies only to signs, signals, and
warning devices, this rationale likewise applies to TxDOT’s decision regarding
when to install the planned traffic-monitoring cameras because a governmental unit’s
plans regarding the safety features of a roadway are discretionary.  See
State v. San Miguel, 2 S.W.3d 249, 251 (Tex. 1999) (per curiam)
(interpreting section 101.056). 

In their pleadings, appellees do not specify the reason or
reasons why TxDOT failed to install these devices.  Consequently,
appellees’ pleadings do not affirmatively demonstrate the trial court’s
jurisdiction over these claims.  However, the allegations under consideration
do not affirmatively demonstrate incurable defects in the court’s
jurisdiction.  Specifically, it is unclear whether TxDOT’s conduct involved negligent
implementation of a discretionary policy decision[6]
(e.g., construction workers negligently overlooked that construction plans
ordered installation of the devices on a certain date), for which immunity is
waived under the TTCA, or a discretionary policy decision (e.g., a decision to
postpone installation or the failure to set an installation date), for which immunity
is not waived.  We also
cannot discern whether appellees are alleging that the absence of these items
caused a premise defect or simply failed to warn of an existing defect or make it
reasonably safe.[7] 
A plaintiff is entitled to an opportunity to amend if additional facts can
overcome the governmental entity’s immunity from suit.  See Miranda, 133
S.W.3d at 226–27; Koseoglu, 233 S.W.3d at 840.  Accordingly, we reverse
the trial court’s denial of TxDOT’s plea and remand for the trial court to
allow appellees a reasonable opportunity to amend their pleadings.  See
Miranda, 133 S.W.3d at 226–27; see also Koseoglu, 233 S.W.3d at
839–40.

Finally, appellees’ petition does not affirmatively
demonstrate the trial court’s jurisdiction over their claim that TxDOT failed
to install “non-discretionary” signs and devices after receiving notice such
signs and devices were necessary.  Appellees have not alleged facts and
circumstances rendering installation of the signs and devices
“non-discretionary.”[8] 
Although we construe pleadings liberally in favor of jurisdiction, we refuse to
allow appellees to avoid the general rule that traffic-control device placement
is a discretionary governmental function by merely describing the act or
omission to be “non-discretionary.”  Therefore, we reverse the trial court’s
order relative to this claim and remand for further proceedings after the trial
court allows a reasonable opportunity for appellees to amend their pleadings.  See
Miranda, 133 S.W.3d at 226–27; see also Koseoglu, 233 S.W.3d at
839–40.

2.         Traffic-Control Device Deficiencies

TxDOT also contends its immunity is not waived relative to appellees’
claims based on certain traffic-control devices that “allow” motorists to
travel in the wrong direction.  In their petition, appellees allege the
Tollway/FM 1093 area near Gaston Road has confusing or misleading signs,
signals, and warning devices, inadequate barricades, and insufficient traffic
control.  As a subset of this claim, appellees allege TxDOT negligently placed
warning signs on the wrong side of the road at or near the intersection. 
Appellees allege these deficiencies constitute negligent implementation of
TxDOT’s policy to operate FM 1093 and the Tollway safely.  Appellees also argue
that placement of warning signs on the wrong side of the road resulted in a
condition under subsection 101.060(a)(2).

It is well established that a governmental unit is not immune
from liability for an injury caused by a premise defect that was created
through negligent implementation of policy.  See Mogayzel v. Tex. Dep’t of Transp., 66 S.W.3d 459,
465–66 (Tex. App.—Fort Worth 2001, pet. denied).  A governmental unit’s negligence in
implementing a formulated policy, such as negligently constructing a designed gabion
wall, is not a discretionary function.  See Mitchell v. City of
Dallas, 855 S.W.2d 741, 745 (Tex. App.—Dallas 1993), aff’d,
870 S.W.2d 21 (Tex. 1994).  “[S]overeign immunity is preserved for the negligent
discretionary formulation of policy, but not for the negligent implementation
of the policy at the [operational/ministerial] level.”  Guadalupe-Blanco River Auth. v.
Pitonyak, 84 S.W.3d 326,
342 (Tex. App.¾Corpus Christi
2002, no pet.).  Further, a governmental unit does not relinquish its discretion
relative to roadway design by implementing a general policy to operate roads
safely.  See Tarrant
County Water Control & Improvement Dist. No. 1 v. Crossland, 781 S.W.2d 427, 433 (Tex.
App.—Fort Worth 1989, writ denied) (holding State’s alleged policy to “warn of
danger” did “not make the State liable for all possible failures to warn.  The
State may still make specific policy decisions about the design of State
projects . . . .”), overruled on other grounds by City of
Dallas v. Mitchell, 870 S.W.2d 21, 23 (Tex. 1994).  In other words, a general policy to build safe roads
does not expose a governmental unit to liability for every conceivable safety
deficiency under a negligent implementation of policy theory of recovery.

A “condition” under subsection 101.060(a)(2) is defined as
“something ‘wrong’ with the traffic sign or signal such that it would require
correction by the State after notice.”  Garza, 70 S.W.3d at 807; see
also Sparkman v. Maxwell, 519 S.W.2d 852, 858 (Tex. 1975) (defining
“condition” as “either an intentional or an inadvertent state of being”).  The
term also “refers to the maintenance of a sign or signal in a condition
sufficient to properly perform the function of traffic control for which it is
relied upon by the traveling public.”  Lawson v. McDonald’s Estate, 524
S.W.2d 351, 356 (Tex. Civ. App.—Waco 1975, writ ref’d n.r.e.).  “[I]n the
cases in which [the supreme court] has interpreted ‘condition’ in the context
of road signs and signals, [it has] found a waiver of immunity only in those
situations in which the sign or signal was either (1) unable to convey the
intended traffic control information, or (2) conveyed traffic control
information other than what was intended.”  Garza, 70 S.W.3d at 807; see
also Gonzalez, 82 S.W.3d at 327 (“[S]ubsection [101.060](a)(2) requires the
State to maintain traffic signs in a condition sufficient to perform their
intended traffic-control function.”). 

Appellees’
contention that confusing and misleading signs, signals, and warning devices,
inadequate barricades, and insufficient traffic control “allow” drivers to
enter the Tollway in the wrong direction implicates the adequacy of devices
chosen by TxDOT, a discretionary design decision for which immunity is not
waived.  See San
Miguel, 2
S.W.3d at 251 (“A court should not second-guess a governmental unit’s decision
about the type of marker or safety device that is most appropriate.”); Tex. Dep’t of Transp. v. Bederka, 36 S.W.3d 266, 271 (Tex. App.—Beaumont
2001, no pet.) (“Department enjoys immunity from suit regarding its decision to
place a particular traffic control signal, even if the signal fails to make the
premises safe.  The selection of the device employed is not its condition.”), overruled on other grounds by Sipes, 195 S.W.3d 689.

 

Next, appellees’ allegation that warning signs were
negligently placed on the wrong side of the road implicates TxDOT’s decision
relative to the location of the signs, another discretionary decision.  See
Gonzalez, 82 S.W.3d at 326–27 (explaining that State retains immunity for
its decision relative to “where” signs should be located); Johnson v. Tex.
Dep’t of Transp., 905 S.W.2d 394, 398 (Tex. App.—Austin 1995, no
writ) (holding that location of where to place sign is a discretionary design
decision).  Appellees allege “[t]his negligent placement caused a failure to
[warn] motorist[s] that they may be going in the wrong direction.”  They argue that TxDOT failed to
maintain the signs “in a condition sufficient to properly perform the function
of traffic control for which [they are] relied upon by the traveling public”
because the signs were on the wrong side of the road.  City of Midland v.
Sullivan, 33 S.W.3d 1, 12 (Tex. App.—El Paso 2000, pet. dism’d
w.o.j.).  Apparently,
appellees contend that location of the warning signs was a “condition” of signs
under subsection 101.060(a)(2) which prevented or hindered the signs from being
seen by motorists.[9]

A “condition” under subsection 101.060(a)(2) has been held to
arise when a sign is “unable to convey the intended traffic control
information.”  Garza, 70 S.W.3d at 807 (citing Lorig v. City of
Mission, 629 S.W.2d 699, 701 (Tex. 1982) (holding that a “stop sign’s
obstruction from view by trees or branches is a ‘condition’ of that sign . . .
.”)). Appellees, however, allege that the signs failed to warn motorists
because of the location of the signs.  Appellees do not cite any authority supporting their
contention that location of a sign as chosen by a governmental entity amounts
to a wrongful “condition” of the sign pursuant to subsection 101.060(a)(2), and
we decline to so broaden the meaning of “condition.”  See Johnson, 905 S.W.2d at 398 (“If a motorist’s
claim that a sign is difficult to see were sufficient to call into question . .
. design discretion, virtually any challenge to the placement of a traffic sign
would suffice to preclude summary judgment on sovereign immunity grounds and
subject the . . . engineering design in this limited area to a jury’s review .
. . .”).[10] 
“[W]hen traffic
engineers decide where to place warning signs around a detour, the State
retains its immunity.”  Gonzalez, 82 S.W.3d at 326–27.  

We also reject appellees’ argument that TxDOT failed to
maintain the signs in a condition sufficient to perform their intended function.
 “[M]aintenance involves preservation of a highway as it was designed and
constructed.”  Siders
v. State, 970 S.W.2d
189, 193 (Tex. App.—Dallas 1998, pet. denied) (emphasis added).  If the signs were
located as designed, TxDOT did not fail to maintain the signs by failing to
relocate them.

Appellees argue TxDOT did not exercise discretion in
installing the subject traffic-control devices because defendant Brown &
Gay Engineers, Inc. drafted construction plans for the intersection which TxDOT
simply implemented.  Appellees do not cite any authority for the proposition
that a governmental entity loses its discretion relative to design of a roadway
when it constructs the roadway pursuant to an outside engineer’s design.  In
such a situation, the governmental entity necessarily exercises its discretion
to approve and adopt the design when it constructs the roadway pursuant to the
design.  Therefore, appellees’ argument is unpersuasive.

Finally, appellees cannot avoid the discretionary-function
exception to waiver of immunity by claiming that TxDOT failed to implement its
policy to operate a safe road because of the confusing and misleading
traffic-control devices; a general safety policy does not vitiate a
governmental unit’s discretion in roadway design.  See Crossland, 781 S.W.2d at 433.

 

Accordingly, appellees’ pleadings do not affirmatively
demonstrate jurisdiction over these claims.  However, the same pleadings do not
affirmatively negate the trial court’s jurisdiction over these claims; appellees
do not specify whether the traffic-control devices were inadequate, or the
warning signs were negligently located, because of TxDOT’s negligent
implementation of the construction plans.[11] 
Consequently, we reverse the trial court’s order denying TxDOT’s plea relative
to this claim, but remand for further proceedings after the trial court allows
appellees a reasonable opportunity to amend their pleadings.  See Miranda,
133 S.W.3d at 226–27; see also Koseoglu, 233 S.W.3d at 839–40.

3.         Condition of the Pavement Markers

TxDOT next challenges appellees’ claim that it failed to
maintain pavement markers on FM 1093 and Tollway exits.  

Failure to maintain a warning device is a claim pertaining to
a “condition” pursuant to subsection 101.060(a)(2).  See Lawson, 524
S.W.2d at 356.  A
governmental unit is immune from claims involving the condition of a traffic-control
device “unless the . . .
condition . . . is not corrected by the responsible governmental unit within a
reasonable time after notice.”  Tex. Civ. Prac. & Rem. Code Ann. §
101.060(a)(2).  In its plea, TxDOT contends appellees can produce no evidence
that it had notice of any maintenance defects:

[Plaintiffs] have not identified, alleged, or
evidenced any non-discretionary maintenance defect under the Government’s
control that caused any actionable damages for which the danger was appreciated
by the Government but not by Plaintiffs.

However, in a plea to the jurisdiction, a defendant must produce evidence
that the trial court lacks jurisdiction before the plaintiff has the
burden to present evidence establishing a fact question regarding jurisdiction. 
See Miranda, 133 S.W.3d at 228.  Because TxDOT did not present
evidence negating its prior knowledge that the pavement markers were in a
deficient condition, appellees did not have the burden to present evidence creating
a fact question relative to TxDOT’s notice.[12] 
Thus, we affirm the trial court’s denial of TxDOT no-evidence challenge regarding
its notice of the pavement markers’ condition.

            Next, TxDOT argues for the first time on appeal that appellees
fail to demonstrate how the allegedly dilapidated condition of the pavement
markers proximately caused the underlying accident.  As noted above, the TTCA
provides a limited waiver of immunity for “personal injury and death so
caused by a condition or use of tangible personal or real property . . .
.”  Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (emphasis added).

Proximate cause includes both cause in fact and
foreseeability.  Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue, 271
S.W.3d 238, 246 (Tex. 2008).  Cause in fact requires that the allegedly
negligent act or omission constitute “a substantial factor in bringing about
the injuries, and without it, the harm would not have occurred.”  Id.
(quoting IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143
S.W.3d 794, 799 (Tex. 2003)).  The conduct of a defendant may be too attenuated
from the resulting injuries to be a substantial factor in bringing about harm. 
Mason, 143 S.W.3d at 799.  Foreseeability exists if the actor, as a
person of ordinary intelligence, should have anticipated the dangers his
negligent act creates for others.  D. Houston, Inc. v. Love, 92 S.W.3d
450, 454 (Tex. 2002) (quoting El Chico Corp. v. Poole, 732 S.W.2d 306,
313 (Tex. 1987)).  In support of its argument, TxDOT relies heavily on Dallas County Mental Health &
Mental Retardation v. Bossley.  968 S.W.2d 339 (Tex. 1998).  

In Bossley, a mental-health patient escaped a
treatment facility through unlocked doors, traveled on foot for about half a
mile, and attempted to hitchhike along a highway.  Id. at 340–41.  Before
he could be apprehended, the patient leaped in front of a moving truck.  Id.
at 341.  In holding that the condition of the doors was not a proximate
cause of the patient’s death, the supreme court explained, “Although [the patient’s] escape
through the unlocked doors was part of a sequence of events that ended in his
suicide, the use and condition of the doors were too attenuated from [his]
death to be said to have caused it. . . .  [His] death was distant
geographically, temporally, and causally from the [doors.]”  Id. at 343. 
According to the court, “Property
does not cause injury if it does no more than furnish the condition that makes
the injury possible.”  Id.

            Bossley is distinguishable from the
present case.  Appellees allege the pavement markers were in a state of
disrepair and drivers were not warned about traveling in the wrong direction.  TxDOT
argues the casual connection is too tenuous to support jurisdiction because of the
eight-mile distance between the deficient pavement markers and the accident
site.  Because of the
close relationship alleged among the deficient markers, Ladson’s entering the
Tollway in the wrong direction, and the head-on, wrong-way collision, we
decline to hold that the distance between the markers and the accident site requires
a conclusion of no cause in fact.  The condition of the markers was “not so distant
geographically, temporally, and causally from the accident as to require a
conclusion that legal causation does not exist.”  Sullivan, 33 S.W.3d at
9.  “The nexus between the alleged premises [defect] and [injury] in this case
is not so highly attenuated that it defies the definition of proximate cause.”  Campos v. Nueces County, 162
S.W.3d 778, 787 (Tex. App.—Corpus Christi 2005, no pet.).

Next, TxDOT references evidence that
Ladson was intoxicated and warning signs were in place on the night of the
accident.  TxDOT argues that it was not “foreseeable that a severely
intoxicated person would fail to see a pavement marking (allegedly in a state
of disrepair), and the warning signs posted to deter wrong-way entry to the
[Tollway], and then travel approximately eight and a half miles in the wrong
direction, ultimately crashing his car into motorists traveling in the proper
direction.”  Assuming without deciding that we may consider this evidentiary
argument (not raised in the trial court), such facts do not negate legal
causation under the alleged circumstances, but are factors for the trier of
fact to consider.  See Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996)
(“Foreseeability requires only that the general danger, not the exact sequence
of events that produced the harm, be foreseeable.”); see also County of
Cameron v. Brown, 80 S.W.3d 549, 556–57 (Tex. 2002) (“While [plaintiff’s]
alleged lack of care may be an issue of comparative responsibility for the jury
to decide . . . , it does not render the subsequent harm in this case
unforeseeable.”).  We
overrule TxDOT’s causation challenge.

This conclusion does not end our review of appellees’
pavement-markers claim because we are obliged to ascertain the existence of subject-matter
jurisdiction.  See Univ. Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser,
140 S.W.3d 351, 358 (Tex. 2004), superseded by statute on other grounds,
Tex. Gov’t Code Ann. § 311.034 (Vernon 2005).  We identify sua sponte a
pleading deficiency relative to appellees’ claim concerning the condition of
the pavement markers.

Appellees allege the “pavement markers were in a condition to
insufficiently perform their traffic control function . . . .”  As such, the
claim concerns the condition of a traffic-safety device and, thus, falls under
the provisions of subsection 101.060(a)(2).  Tex. Civ. Prac. & Rem. Code
Ann. § 101.060(a)(2); see also Sullivan, 33 S.W.3d at 11 (explaining
that complaint regarding condition of pavement markers falls under subsection
101.060(a)(2)).  To affirmatively demonstrate the trial court’s jurisdiction,
appellees must allege “the condition of [the pavement markers] [was] not
corrected by the responsible governmental unit within a reasonable time after
notice[.]”  Tex. Civ. Prac. & Rem. Code Ann. § 101.060(a)(2).  This
notice can be either actual or constructive.  See City of Austin v. Lamas,
160 S.W.3d 97, 101–03 (Tex. App.—Austin 2004, no pet.); Robnett v. City of
Big Spring, 26 S.W.3d 535, 538 (Tex. App.—Eastland 2000, no pet.).  Such an
allegation is absent from appellees’ pleadings.  Accordingly, we remand for
further proceedings after the trial court allows appellees a reasonable
opportunity to amend their pleadings pertaining to the condition of pavement
markers.  See Miranda, 133 S.W.3d at 226–27; see also Koseoglu,
233 S.W.3d at 839–40.

D.        Negligent Implementation of Policy to Operate Tollway Safely

We next consider TxDOT’s challenge to appellees’ negligent-implementation
claims relative to the Tollway.  As stated supra, a governmental
unit is not immune from suit for negligent implementation of policy, such as
negligent construction or maintenance.  See Mitchell, 855
S.W.2d at 745.

Appellees allege all defendants agreed “to manage, regulate, oversee,
construct, maintain, and operate . . . the [T]ollway safely,” and “formulated a
policy to monitor the [T]ollway entrances and exits to prevent wrong-way
traffic and unauthorized vehicles on the [T]ollway.”  According to appellees,
this policy was negligently implemented because the Tollway was constructed
with minimal road shoulders and without traditional tollbooths and toll plazas
from which wrong-way drivers could be detected by law-enforcement personnel and
other persons.

We once again note that TxDOT’s discretion for roadway design
was not limited by any general policy to operate the Tollway safely.  See Crossland, 781 S.W.2d at 433.  Appellees
also specifically allege that TxDOT made a policy decision to monitor all
Tollway entrances for wrong-way drivers.  Nevertheless, TxDOT had discretion in
choosing how to monitor the Tollway, and it is unclear whether appellees are
alleging that the absence of traditional toll booths and toll plazas caused a premise defect or simply failed to warn of an
existing defect or make it reasonably safe.[13] 
It is also unclear whether
the failure to construct wider road shoulders resulted from discretionary
formulation of policy or negligent implementation of policy.  See Siders, 970 S.W.2d at 193 (emphasizing that
negligent implementation claim fails because road was constructed as designed).
 Accordingly, we remand
for the trial court to allow appellees a reasonable opportunity to amend their
pleadings.  See Miranda, 133 S.W.3d at 226–27; see also Koseoglu,
233 S.W.3d at 839–40.[14]

E.        Joint Enterprise

           Finally, we consider TxDOT’s contentions regarding appellees’
joint-enterprise theory of liability.

An
essential element of joint enterprise is an agreement, express or implied,
among the group members.  Seureau v. ExxonMobil Corp., 274 S.W.3d
206, 222 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  Joint enterprise is not an independent
basis for waiver of immunity, but may result in waiver of immunity under the
TTCA where a governmental entity would be liable for another’s negligence if
the governmental entity were a private person.  Id. at 218–19 (quoting Tex. Dep’t of
Transp. v. Able, 35 S.W.3d 608, 613 (Tex. 2000)).

            Appellees allege that TxDOT, FBCTRA, HCTRA, Fort Bend County,
Harris County, and Michael Stone Enterprises “had an express or implied
agreement to [construct,] develop, operate, and maintain the Westpark Tollway.” 
In its argument, TxDOT asserts that the only two agreements at issue are the TxDOT-FBCTRA agreement and an agreement between Harris
County and Fort Bend County (“Counties’ agreement”).  However, nothing in the
record supports that no other agreements existed.

As an initial matter, TxDOT asserts that it is not a party to
the Counties’ agreement.  We agree and hold that the Counties’ agreement does
not support a claim of joint-enterprise liability against TxDOT.

            TxDOT also argues that the Local Government Code precludes a
party from claiming that a contract TxDOT executed with FBCTRA supports a claim
of joint-enterprise liability.  See Tex. Loc. Gov. Code Ann. § 271.160 (Vernon 2005).  We agree
for the reasons stated in today’s opinion in the companion case, Fort Bend
County Toll Road Authority v. Olivares, No. 14-09-00161-CV.  Accordingly,
we hold appellees are not entitled to pursue a cause of action under a joint-enterprise
theory of liability between TxDOT and FBCTRA.  

Nonetheless, we cannot dismiss appellees’ joint-enterprise
theory of liability against TxDOT in its entirety because TxDOT presented no
affidavits or other evidence negating its participation in any other express or
implied agreements.  Therefore, TxDOT has not conclusively negated appellees’
allegation that express or implied agreements existed between TxDOT and HCTRA,
Fort Bend County, Harris County, and Michael Stone Enterprises.  See City of Austin v. Leggett, 257 S.W.3d 456, 462 (Tex.
App.—Austin 2008, pet. denied) (“Unless a pled jurisdictional fact is
challenged and conclusively negated . . . , it must be
taken as true for purposes of determining subject-matter jurisdiction.”).  

Accordingly, we reverse the trial court’s denial of TxDOT’s
plea relative to appellees’ claim of joint-enterprise liability between TxDOT and
FBCTRA and render judgment dismissing this claim.  However, we affirm the trial
court’s denial of TxDOT’s plea relative to appellees’ claim of joint-enterprise
liability between TxDOT and HCTRA, Fort Bend County, Harris County, and Michael
Stone Enterprises.

IV.   Conclusion

      We affirm the trial court’s order denying that portion
of TxDOT’s plea challenging appellees’ claim of joint-enterprise liability between
TxDOT and HCTRA, Fort Bend County, Harris County, and Michael Stone Enterprises.  We reverse the trial court’s order and render judgment
dismissing for want of jurisdiction appellees’ claim of joint-enterprise liability
between TxDOT and FBCTRA. 


Finally, we reverse the trial court’s order denying
TxDOT’s plea and remand for further proceedings after the trial court allows appellees
a reasonable opportunity to amend their pleadings relative to the following
claims:

·       
Premise defect resulting from
failing to install warning flashers, cameras, and non-discretionary signs;

·       
Premise defect resulting from
inadequate barricades, insufficient traffic control, and signs placed on the
wrong side of the road; 

·       
Premise defect resulting from deficient
condition of pavement markers; and

·       
Premise defect for constructing the
Tollway with minimal shoulders and without traditional tollbooths and toll
plazas.

                                                                                                                                                                                                                                                

 

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

Panel consists of Chief Justice
Hedges, Justice Seymore, and Senior Justice Hudson.* (Hudson,
J., dissenting)

 









[1] The trial court initially granted TxDOT’s combined
plea and motion, but because appellees were not served with the plea and
motion, the parties agreed to have the order granting the same vacated and set
aside.

 





[2]
In previous panel decisions from this court, we expressed that an appellate
court does not have jurisdiction on interlocutory appeal to address grounds not
asserted in the underlying plea to the jurisdiction.  See Galveston Indep.
Sch. Dist. v. Jaco, 278 S.W.3d 477, 479 n.2 (Tex. App.—Houston
[14th Dist.] 2009), rev’d on other grounds, 303 S.W.3d 699 (per curiam);
State v. Clear Channel Outdoor, Inc., No. 14-07-00369-CV, 2008 WL
2986392, at *3 (Tex. App.—Houston [14th Dist.] July 31, 2008, no pet.); Clear
Lake City Water Auth. v. Friendswood Dev. Co., 256 S.W.3d 735,
747 n.14 (Tex. App.—Houston [14th Dist.] 2008, pet. dism’d); Prairie
View A & M Univ. v. Dickens, 243 S.W.3d 732, 736 (Tex. App.—Houston
[14th Dist.] 2007, no pet.); Brenham Hous. Auth. v. Davies, 158 S.W.3d
53, 61 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  

 

We are not bound by these opinions because the Gibson
decision is directly on point.  See Chase Home Fin., L.L.C. v. Cal W.
Reconveyance Corp., No. 14-08-00115-CV, 2010 WL 660166, at *9 (Tex.
App.—Houston [14th Dist.] Feb. 25, 2010, no pet. h.) (“[A]bsent a decision from
a higher court or this court sitting en banc that is on point and contrary to
the prior panel decision . . . , this court is bound by the prior holding of
another panel of this court.”). 





[3] While this argument could be construed as a defense
addressing the merits of the case, we conclude Miranda allows this court
to examine the issue as a challenge to jurisdiction under sovereign immunity.  See
133 S.W.3d at 224–25; Bexar Metro.
Water Dist. v. Evans, No.
04-07-00133-CV, 2007 WL 2481023, at *2 (Tex. App.—San Antonio Sept. 5, 2007, no
pet.) (mem. op.) (“Because immunity from suit and immunity from liability are
coextensive under the Texas Tort Claims Act, a governmental unit’s plea to the
jurisdiction challenging the existence of jurisdictional facts may implicate
the merits of the plaintiff’s cause of action.”); see also State v. Lueck, 290 S.W.3d 876, 880–84 (Tex. 2009).





[4]
In the TxDOT-FBCTRA agreement, “Project” is defined in relevant part as
“construction of the interchanges connecting the [Tollway] at FM 1464/FM 1093
and at SH 99 . . . .”

 





[5]
We recognize that both TxDOT and appellees rely on the “Project Maintenance”
section of the TxDOT-FBCTRA agreement as support for their arguments.  This
section expressly provides, “Upon completion of the project, [TxDOT] and [FBCTRA]
agree to the following operation and maintenance responsibilities . . . .” 
Nevertheless, we refuse to construe appellees’ reliance on this section as a
deliberate admission that the project was complete at the time of the
accident.  See Regency Advantage Ltd. P’ship v. Bingo Idea-Watauga, Inc.,
936 S.W.2d 275, 278 (Tex. 1996) (“A judicial admission must be a clear, deliberate, and unequivocal
statement.”). 

 





[6]
“Negligent implementation” within the context of a claim under the TTCA is
discussed in greater depth infra.





[7] To the extent appellees allege that the lack of
traffic-monitoring cameras caused a dangerous condition because there were no
people monitoring the roadway, they fail to allege a premise-defect claim under
the TTCA.  Such a “condition” concerns the activity of people, not the
condition of the roadway itself.  See Tex. Parks & Wildlife Dep’t v.
Garrett Place, Inc., 972 S.W.2d 140, 144 (Tex. App.—Dallas 1998,
no pet.).

 





[8]
To the extent appellees allege the signs were “non-discretionary” because they
were required by the Texas Manual on Uniform Traffic Control Devices (“MUTCD”),
appellees’ allegation that TxDOT “retained the right to supervise and inspect
all signs, barricades, and traffic control plans to insure compliance with the
[MUTCD]” is not an allegation that TxDOT was required to select and place signs
exactly as specified in the MUTCD.  Compliance with the MUTCD’s provisions is
generally not mandatory.  See Brazoria County v. Van Gelder, 304 S.W.3d
447, 454 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).





[9]
To the extent appellees allege the signs were placed on the wrong side of the
road because their location did not comply with the MUTCD, appellees’
allegation that “[TxDOT] retained the right to supervise and inspect all signs,
barricades, and traffic control plans to insure compliance with the [MUTCD]” is
not an allegation that TxDOT was required to select and place signs exactly as
specified in the MUTCD.  Compliance with the MUTCD’s provisions is generally
not mandatory.  See Van Gelder, 304 S.W.3d at 454.

 





[10]
We note that in Sparkman, the supreme court held that a red left-turn
arrow which was installed and operated as designed and was intended to direct
left-turning motorists to stop presented a condition because it actually
directed some motorists to proceed.  519 S.W.2d at 856–58.  Therefore, the
governmental entity’s design decision was held to present a condition because
it conveyed traffic-control information other than intended.  In the present
case, while appellees allege the signs were “misleading” and “confusing,” there
are no allegations that the signs conveyed unintended traffic-control
information creating a dangerous premises condition.  Thus, we decline to apply
Sparkman to appellees’ claim.

 





[11]
See City of Lancaster v. Chambers, 883 S.W.2d 650, 654 (Tex. 1994)
(“[A]ctions which require obedience to orders . . . are ministerial.”); see
also Siders, 970 S.W.2d at 193 (holding negligent-construction claim
regarding a stop sign was merely a disguised design-defect claim because
plaintiffs’ witnesses admitted road was constructed as designed and plaintiffs
agreed the design plans did not specify the removal of the stop sign).  

 





[12]
TxDOT also contends that appellees’ premise-defect claims should be dismissed
because TxDOT did not have actual knowledge of any allegedly dangerous
condition.  TxDOT essentially argues this element is conclusively negated
because appellees failed to present evidence creating a fact question as to
TxDOT’s knowledge.  However, in its plea to the jurisdiction, TxDOT argued
“there is no evidence TxDOT had actual knowledge of . . . a deficiency in
available illumination.”  This argument did not place the burden on appellees
to present evidence of TxDOT’s knowledge.  See Miranda, 133
S.W.3d at 228.  Accordingly, we overrule TxDOT’s contention.





[13]
To the extent appellees allege that the lack of toll booths and toll plazas
caused a dangerous condition because there were no people monitoring the
roadway, they fail to allege a premise defect claim under the TTCA.  Such a
“condition” concerns the activity of people, not the condition of the roadway
itself.  See Garrett Place, 972 S.W.2d at 144.

 





[14] TxDOT also challenges appellees’ claims that TxDOT
was negligent in monitoring and operating the Tollway, arguing such claims do
not pertain to a condition or use of property as required by section 101.021.  See
Tex. Civ. Prac. & Rem. Code § 101.021(2).  However, construing
appellees’ pleadings in favor of jurisdiction, the factual basis for these
claims is the lack of traditional toll booths and toll plazas on the Tollway. 
We cannot discern whether such items were required to be implemented or whether
appellees contend the absence of such items caused a premise defect or simply
failed to warn of or make safe an existing premise defect.  Thus, we remand for
an opportunity to amend.











* Senior Justice J. Harvey Hudson sitting
by assignment.